Good morning, may it please the court. My name is Thomas Otake. People call me Tommy and I'm here today representing Adolfo Guzman, who is not present. He is in custody as a result of this case. Good morning. You know, last week the court ordered us to come here today prepared to discuss United States v. Draper and I'll begin there. I'll begin by emphasizing, as we did in our briefs, that our position is that the case that is directly on point, the case that is so factually similar and provides the applicable law in this situation is United States v. Underwood, 2013 case from this circuit. When I received the order asking us to come talk about Draper and I read Draper, I guess the question came up about how does Draper interact with Underwood and I'll begin by stating the obvious and the obvious is Draper is a 1959 case and it was around for 50 years when the panel that dealt with Underwood, the Ninth Circuit panel that dealt with Underwood, you know, dealt with Underwood. Draper had been around for 50 years and the panel that dealt with Underwood didn't feel Draper interfered with their ruling and I submit it's because really when you're looking at Draper and Underwood you're talking about really apples and oranges and the main reason for that is, as you know, Draper talks about, deals with warrantless arrest whereas Underwood deals with the affidavit in support of a search warrant and when you look at what Underwood stands for really at the heart of it it's it's not really about reliability as was Draper and the tip the tip in Draper. Well but Underwood, you don't have a lot of time so you probably, I'm just going to point out some things that seem to distinguish it and maybe you want to. In Underwood the defendant challenged a state warrant for his residence and the affidavit stated that three months earlier law enforcement agents observed the defendant deliver two unmarked crates to known drug traffickers. So the affidavit didn't contain, it had no facts indicating the crates contain drugs, that the defendant had drugs at his home or that he was otherwise involved in drug trafficking. The affidavit also created confusion about the source of certain beliefs and conclusions, lacked relevant information about the affiance training experience and relied on information from a previously executed federal search warrant that was never attached to the state warrant. So those omissions led the court to conclude that the affidavit failed to provide a sufficient basis for probable cause. So, you know, and I don't see that this affidavit has the same flaws. It's based on events that occur the same day that the warrant application was submitted and executed, not on events that occurred months before. Surveillance operations in San Diego and then Honolulu provided reason to believe that Perez had just had received narcotics for distribution from a known drug courier and carried those drugs to his apartment. And so, I mean, there's a lot of, there are differences, it's not, they're not exactly the same. They are the same in a sense that what I would submit Underwood, at the heart of it, stands for is that you cannot rely on just conclusory remarks as a basis for probable cause. And in Underwood, what the Underwood court talked about is how in the affidavit the individual, Underwood, was referred to as a drug courier. And there wasn't any underlying facts provided to the judge in that case as to why this assertion that he was a drug courier was true. And absent those underlying facts, you couldn't take this fact that he was a drug courier as true, and you couldn't therefore assume or make these other inferences about the crates and other things. Just like in Guzman. In Guzman, you have a situation where, I would submit the affidavit in Guzman is actually even more lacking than in Underwood. You have a situation where a law enforcement agency on the mainland contacts the DEA here and says there's a known drug courier on a flight carrying drugs. That's what goes into the affidavit to the magistrate here. There's nothing in the affidavit to the magistrate here that says where that information came from, why it's true, is it based off an anonymous tip, is it based off knowledge from the agents in San Diego. There is nothing that says where that information comes from. It's a conclusory assertion that this person is a known drug courier. Is it your position, counsel, that anonymous tips should be given more weight than assertions from law enforcement officers or tips from law enforcement officers? Anonymous tips should be not given more weight. But if you, the point is, in this case, there was nothing that gave the magistrate judge the underlying facts so he could, he or she. But why isn't this like a tip from a law enforcement, another law enforcement officer? This was a federal DEA from another city calling the local law enforcement saying there's going to be this person who we suspect is a drug courier, he's going to be wearing this or looking, you know, all the details. If an anonymous tip had done that and they were able to verify what they did, why wouldn't we be able to give that, I mean, it seems like we would be able to give that some consideration. The problem I'm having here a little bit, and I'm just trying to reconcile our law too, is that, you know, these assertions or, you know, tips from law enforcement are to be given no weight. And the equivalent from an anonymous tip, we give, look at the totality of the circumstances and, you know, can give it some consideration. And I think this is what I really want to emphasize about Underwood. Okay, we're not, not, it's, I'd submit it's not about reliability of a tip at all. It's about who gets to make the decision as to whether or not there's probable cause. And what Underwood says in an affidavit in support of a search warrant, it must state the underlying facts so that the issuing judge, and this is the important part, can draw his or her own reasonable conclusions as to the existence of probable cause. In other words, it's not, when you're dealing with a law enforcement officer putting an affidavit, this person's a known drug courier, therefore we should search his house. The magistrate judge is deferring to the officer's... Okay, but at the time, by the time they apply for the warrant, right, they've seen, they have this picture of who this is, they spot that person, they put the person under surveillance, they observe a transaction where an empty backpack then seems to be full, then they go up to a room, they knock on the room, and marijuana smells coming out of it, right? And they say, and then finally this other guy also, after he doesn't come out right away, but then they say, is anyone in there? Is anyone in there? And he comes out. And they don't go in and search, and they get a warrant at that point. First of all, they didn't observe a transaction. Somebody went up to a room, they didn't know what happened in the room, and he came out and they say his backpack looked fuller than it did when he went in. That was not, there was no transaction observed. Secondly, there's that observation though. His backpack was full when he came out? Well, if, all right, if it's a known drug carrier, and then they come here, that you can, you can argue it whatever way you want to argue it, but there's the observation there that it's fuller. You can't, and then you've got the knock on the door, you got the marijuana coming out, and you've got calls for the, you know, is anyone else back there? Is anyone else in there? You can. First of all, all of those observations are tainted by this conclusory assertion that the person was a known drug courier. If you take that out of the mix, all of those observations are very innocent. Two people who are friends go into a room, they leave. Another guy who doesn't speak English very well tells an officer that nobody else was in there. Underwood dispels the notion that personal marijuana use is any basis to get a search warrant for cocaine and ice. I mean, that's why this case, Underwood is frankly, I mean, very similar in that regards. So why don't you I want to make sure you get, I want you to finish your thought, but make sure you address the good faith exception before you sit down. Sure. But finish your thought. Okay. And so if you take out that ball, that conclusory assertion, this because his backpack is full, well, it must be drugs, then that's what Underwood says, is you cannot make those assertions without giving the magistrate judge the facts as to why that person is a known drug courier. And without that, it's just an individual on the street who's carrying a full backpack. But anyway, as to the good faith exception, Underwood, again, is directly on point. As indicated in Underwood, if an affidavit is bare bones... Did Leon, did, was, so what did they say in, about Leon and Underwood? In Underwood, what they said is, because the affidavit was so lacking in indicial probable cause, it rendered official belief in existence entirely unreasonable. In other words, what it, what it says is, when you have a bare bones affidavit, when you use conclusory remarks, and you don't provide underlying facts, it is never reasonable for anyone to rely on that, on that warrant that flows from there. And so that's the key, you know, in the last few seconds I have here, is I asked the court to consider getting away from this reliability issue and focusing instead on what Underwood focuses on, on the fact that a magistrate judge has to be able to exercise his or her own independent, unbiased discretion in determining if there's probable cause. And he or she can only do that if the underlying facts are provided. If not, you have situations where an officer anytime can say, ah, that's a known drug courier. Okay, well, let's go search his house. The magistrate judge has to be able to see what are the facts that support that, because that's the point. It's not the officer that's making the call about probable cause in the search warrant situation, it's the magistrate judge. And if the officer doesn't give him those facts, then really we're just deferring to the officer. And so that's really what Underwood stands for, and that's why it's directly on point with Guzman. And my time is up. Thank you. Thank you, counsel. We'll give you a couple minutes for appreciate it. Thank you. Morning, honors. Tony Roberts, who represent the United States in this case. Uh, first of all, Judge Curran was the magistrate judge that made the initial decision on the probable cause, and he had a substantial basis for making his probable cause determination that that there were drugs inside of appellant's condominium. He used the common sense approach and asked the question that the Supreme Court has directed in Illinois v Gates. And that question is, was there a probable cause to believe that contraband or evidence would be located in the particular place that was going to be searched? Now, Judge Gilmore and the suppression hearing stated immediately that she found that Underwood was distinguishable from this in case in her words on the excerpts of records at 1 14 in about 10 places. The panel's already noted that there's a number of distinctions in Underwood. Um, but the important part is that we're not, according to the Supreme Court and even the Ninth Circuit, we're not to apply a hyper technical analysis to an affidavit. What we're supposed to do is apply a common sense approach. And under Illinois v Gates, it's a totality of the circumstances that applied. And under Illinois v Gates, this court should affirm the district court's Well, part of the problem is pointed out by your opposing counsel is that the initial suspicion comes from the known drug courier, which which is an assertion without any underlying facts. Now, if if that had been part of the chain in the middle, that might be different. But isn't it all dependent upon the determination, the reliance on the known drug courier? Well, if you're asking if the entire affidavit is dependent upon that, Your Honor, I always be Gates reference to Draper, the very case that this court asked us to consider. And on footnote 13 in Illinois v Gates, it talks about Draper commenting about seemingly innocent activity, becoming suspicious in the light of an initial tip. And the may also say that the holding in Underwood does not establish that courts cannot rely upon conclusions. What it says is that courts cannot rely upon solely conclusions. And really, it's it's a misnomer in page 1081 and Underwood. This is the one sentence that the appellant is reliant upon. It says that these facts cannot be considered. It refers to Cervantes. It also refers to the case that only the Gates overturns enough. So in Underwood, they're actually stating the holding in Cervantes and Cervantes. But the holding is the holding. And it seems I mean, it seems like in Underwood, they held that a detective's conclusory and unsupported allegations and stake in a state court affidavit, some of which, you know, here were copied from the federal. It seems like a conclusory statements can't support probable cause. Your Honor, if you look at what Underwood was, but let me ask you, I'm happy to look at that. But do you agree or disagree that that statement that says the drug courier is coming from San Diego is a conclusory statement? First of all, your honor, the entire phrase is that the individual was under investigation, which is a fact. He was under investigation, which was communicated by D. E. A. It was. It was. The information was that he was traveling to Hawaii. The how about just known drug carrier? Own drug courier is a fact that the agents in California knew and conveyed to the agents here. Is that a conclusory statement? We don't believe it is. Why not? Because it is a statement of a law enforcement officer in an investigation in the common in investigation and the court. And how is that different from Underwood? That is different because in in the the conclusion that was made in Underwood, the first conclusion was that there was these boxes that were being transferred and that there was something inside the boxes, presumably based on an investigation. Well, actually making it one step further, not they didn't just say he's under investigation. They said he's actually moving boxes that have contained drugs. So you think the words under investigation is the main distinguishing factor here? The main distinguishing factor, Your Honor, but certainly one of them. And and I think this the courts have allowed. So anytime they say under investigation, they can make a conclusory statement and it it would just, uh, negate Underwood again. I don't believe Underwood holds that you can't rely on the conclusions. What Underwood says is that you can't rely solely on conclusions. And it refers to Cervantes again. I asked the court to consider what Cervantes holds. It's not even a warrant case. And, you know, furthermore, the Supreme Court has repeatedly suggested that we prefer agents and officers seek search warrants. And in this matter, the agents in this case did exactly what they should have done. And they went out and they actually obtained a search warrant when they were standing at the door of a house where they could have arguably gone into. Well, I guess I'm folks out because it's unsupported assertion. I think Underwood used the language unsupported assertion that a known drug carrier, you know, was whatever. And and here is it supported? Where's the evidence of support here? Well, again, we believe that the and that the judge could then take and make inferences from the conduct that the officer verified. It's not a different than the anonymous. So that's your response under investigation provides the support because otherwise, I mean, I'm just drawing on Underwood, which guides us, I think, um, here some based on the facts. Um, I think, Your Honor, in order to hold what the appellant wants you to hold and say that this is what Underwood stands for, you'd have to disregard Illinois v. Gates. You'd have to disregard Draper. You have to disregard all the cases that say that you can rely upon anonymous tips and other information, just like you asked the appellant. I understand what you're saying. But Underwood's our precedent, is it not? Well, for the Ninth Circuit, for the Oh, to the extent that it that you find that it's it's a holding that he's saying it's saying it's holding. But if you look at the underlying statement, the very next sentence in that same paragraph on page 1081 says the affidavit must recite underlying facts of the judge can draw own reasonable inferences. And so that would be we know he's a drug courier because and then fill in the rest of the sentence instead of just saying he's a drug courier. But that's the difference between the conclude conclusion and a conclusion was supporting facts. Well, here's here's the other. Here's the other analysis is that it would be saying this person's a known drug courier. So let's go arrest him right now. But that's not what happened in this case. And so it's the one fact. And even if this court finds that Underwood purports the rule that the appellant's trying to say and that you can't reply on any conclusions in the grand scope of totality of the circumstances, we believe that the United I mean, the Supreme Court has said we don't apply hyper technical analysis. It's not any conclusion. It's this. It's the conclusion on this particular surrounding this particular phrase of known drug user known drug care courier. Um, it's not any conclusion. And I know you're saying that, you know, it also says it shouldn't be, you know, solely based on that. But, you know, just trying to is it your position that there's sufficient probable cause? Yes, Your Honor. We believe there still would be. I would like to ask the court to also consider the line of cases that Judge Gilmore relied upon, and that was Ventresca, which says you can rely on hearsay of officers in a similar investigation and the steep case, which is at 5 64 4 65 Fed second 13 10, which is a Ninth Circuit case, saying that you can rely on information from in a common investigation. Sure, it's reliable. Yeah, sure. But that's but that's different from saying you're lying conclusions in a hearsay statement. You rely on hearsay, of course. My question is on this. If you take out the tip, you take out the drug courier tip. What else do you have once they land that would be suspicious enough to rise the level of probable cause? Well, the conduct that the individual mean the fact that he's under investigation. If you don't, if you say he's not, I'm saying you take out. I think I think you would concede. Maybe I'm wrong, and that's why I'm asking that. If you just take out the entire phone call, the entire communication from the mainland, there's nothing that suspicious in and of itself that happened on the island. That was that would rise to level probable cause. Would you get to the door when the defendant lies about? But you don't ever get to the door, do you? Without that, if they start following him for some, they wouldn't follow him for exactly. Yeah. And so, but if you if you follow him as you, you know, as even the the effects under illness be gates was an anonymous letter. Your honors, let me ask you this. If if do we have to find that? I think lapses, which is a Sixth Circuit case, talks about if an officer says it that it's it's presumptively reliable, um, as opposed to if it's an anonymous tip, even if we didn't find that it was presumptively reliable, but that it was a tip. But, you know, that, uh, is, uh, would there be enough? Yes, Your Honor, because I see my time is up. My answer sure. Um, yes, Your Honor. And and the reason would be because just like an anonymous tip, it allows the officers to then go and verify the information that was given to them. So it's the exact circumstances really of Draper. Although the agents went one step beyond and went and got the warrant instead of acting upon their own determination of probable cause, which the Supreme Court wants our officers to do. I think maybe two since co counsel addressed the Leon issue. Assuming, uh, what? How would you address that? Well, to the extent that this court believes that any conclusions need to be thrown out, the officers were acting on the warrant, and it was not bare bones. There were facts of what they saw at the airport, facts of what they saw at the hotel facts. If you look at the affidavit in paragraphs 14 through 17, which appeared in the search of record at 107 through 108, it lists the fact that the person arrives at 13 20, which is 1 20. It arrives at the airport, travels to the airport, and the whole interaction at the hotel happens in a relatively short period of time because he defendant Perez is leaving at 1500 hours, which is only an hour and 40 minutes. So those circumstances raise suspicions. The empty backpack becoming full and following him to the area where marijuana is burning and he all that would be the implications if we were to say that, uh, that you can't rely on another officer calling and saying that there's a known drug carrier. How would that influence, uh, agencies calling head saying, Hey, you know, we got this guy under investigation. Uh, you know, he's coming in at such and such a time, uh, would have severe, severe implications. Your honor. I mean, the agencies have to rely upon each other to do cross state investigations, and it's evident in this case that this individual, as the appellant pointed out, was ultimately prosecuted in another state in another state. Um, agencies would have to figure out how they can communicate and what they can't communicate if they communicate too much, or they could just add why they thought he was a known drug courier. I mean, they had the information. They just didn't put it into the warrant. I mean, this was an ongoing investigation, as you say, right? So based on their investigation, it's just a matter of putting it down. It could be a matter of putting it in. It could be a matter of there being reasons why you wouldn't want to put all the information in about an ongoing investigation in an affidavit that ends up in the hands of a defendant. Any further questions? Thank you, Counsel. We'll give you three minutes for rebuttal. Equalize it out. And just first to the comment of the implications or the question about the we're not at all saying you can never rely on what another officer tells you. We're talking about in an affidavit, though, simply adding in the facts about why this person is a known drug courier. Enough so so that under Underwood and these other cases, a magistrate judge can independently and in an unbiased way make his own conclusions. And that's all that Underwood stands for. Is this this premise that it's not that we just rely on what a tip or what another officer thinks that the whole purpose of the search warrant requirement of the Fourth Amendment is to take it out of the hands of the officer on the scene was trying to ferret out crime and put it in the hands of an independent magistrate judge who can objectively look at the information and make that call. And that's all that Underwood stands for. All the cases he talked about preexisted Underwood. Underwood is totally consistent with all of that. Underwood is a search warrant case where the affidavit you cannot just give bare conclusions or unsupported conclusions that this person is a known drug courier. Let's assume for the sake of argument that we take out the words known drug courier and law enforcement calls. It said there's a person we have under investigation that's flying on this flight. Do you think that's enough? So on on page 20 of our opening brief, we did just that for the court. We took Officer Motsamar's affidavit and we put known drug courier with traveler. And if you want to put even traveler under investigation, then what you have is a traveler under investigation gets to Honolulu Airport. He takes his bag, goes and checks into a hotel room. Somebody he knows comes down to the lobby. He meets him in the lobby. The guy he meets, his bag is empty. They go up, apparently empty. They go up to the room. Nobody sees what happens in the room. About an hour or more later, the guy comes down and his bag now looks like it's full. And then he leaves and goes to a house. So it's absolutely not enough. And then you have the them knocking on the door and there's the smell of personal marijuana use. Underwood completely, I mean, completely deals with that. Completely says the marijuana use is not a basis. Personal marijuana use is not a basis to get a search warrant to go search a house for cocaine and ice or methamphetamine. Then you have the person there who English is his second language and the officer asking him, is anybody else in the house? And he, according to the officer, says no. Maybe he understood it. Maybe he didn't. If he understood it, maybe he's just trying to not have his friends have to interact with the officers. There could be a thousand reasons why he said that. All of that, without this conclusory remark that this person was a known drug courier, makes all of those things not rise to the level of probable cause to get a search warrant  to go search a house. Underwood can coexist with Draper. It does. Underwood was issued after Draper had been around for 50 years. It's apples and oranges. It's a completely different situation. And we appreciate the court's time and questions. Thank you. Thank you both for your arguments this morning. They're very helpful to court. And the case just heard will be submitted for decision.
judges: Thomas, Callahan, Murguia